UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


MICHAEL MAUER,

                    Plaintiff,

        v.                                          Case No. C-1-08-803


DELOITTE & TOUCHE, LLP,

                    Defendant.


## ORDER

This matter is before the Court upon the following motions: a motion for summary

judgment filed by defendant Deloitte & Touche, LLP (doc. 45); plaintiff Michael Mauer's

Motion Pursuant to Fed. R. Civ. P. 56(f) to Deny Defendant's Motion for Summary Judgment,

or, Alternatively, for a Continuance of Plaintiff's Response Pending Completion of Discovery

(doc. 48); and plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's

Motion for Summary Judgment (doc. 82).  Defendant has filed proposed findings of fact and

conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. 59).

### I.  Procedural History

Plaintiff filed this lawsuit on November 14, 2008 (doc. 2).  He brought claims for age

discrimination and retaliation pursuant to the Age Discrimination in Employment Act (ADEA),

29 U.S.C. § 621, et seq., and Ohio Rev. Code Ch. 4112, arising from the termination of his

employment with Deloitte (Counts I-IV).  Plaintiff also brought claims under the Employee

Retirement Income and Security Act (ERISA) (Counts V and VI), but the court granted a motion

by plaintiff to voluntarily dismiss those claims without prejudice (doc. 81).

## II.  Findings of Fact

1. Deloitte is a nationwide company which is organized by geographic region and has several practice groups, each of which is comprised of various service lines.  One practice group is the North Central Region's Enterprise Risk Services (ERS), which consists of four service lines: (1) Internal Audit, (2) Security and Privacy Services, (3) Control Assurance, and (4) Data Quality and Integrity.

2. Plaintiff was assigned to the Cincinnati office throughout his employment with Deloitte. He began his employment with Deloitte in 1996 as a Senior Manager in the Internal Audit Service Line.  He was promoted to Director in the North Central ERS Internal Audit Service Line in October 1999 and held that position at the time of his termination on August 5, 2008.  He was 44 years old at the time of his hire and 47 years old when he was promoted.

3. Plaintiff, together with former North Central ERS Internal Audit Partner Jim Mittenzwei, was responsible for managing a number of employees assigned to the Cincinnati office's Internal Audit staff.  These employees included former North Central ERS Internal Audit Senior Manager Glenn Manny, age 54, who plaintiff hired and promoted.  Manny likewise has an age discrimination and retaliation lawsuit pending against Deloitte.

4. When plaintiff was hired, the Cincinnati office was part of Deloitte's Ohio Valley Region.  In 2006, that Region was consolidated with the Great Lakes Region to form the new North Central Region, which was comprised of offices in eight cities.  The management team for the new North Central ERS Region included: Regional Managing

Partner Kay Benesh; Deputy Regional Managing Partner Brad Carrier; Internal Audit Leader Todd McGowan; National Talent Manager Doug Daniels; and North Central Talent Manager Kathy Hoyng.

5. Deloitte's fiscal year ends on or about May 31, so mid-year reviews are performed in December and January and year-end reviews are performed in May and June.  At mid-year, an employee is rated either "on track" or "off track."  At year-end, an employee receives a numerical rating of either "1" (significantly surpassed expectations), "2" (more than achieved expectations), "3" (achieved expectations), "4" (mixed results, achieved some expectations but further development necessary), or "5" (did not achieve a majority of expectations).  "On track" equates to a "1", "2" or "3" performance rating while "off track" equates to a "4" or "5" rating.

6. North Central ERS Partners, Principals, Directors, Senior Managers and Managers participate in first and second tier meetings where they discuss the performance of Senior Managers, Managers, Senior Consultants and Consultants and propose individual year-end ratings.  The first tier consists of performance reviews at the local office level and the second tier consists of reviews at the service line level.

7. Plaintiff served as a counselor for Glenn Manny and for former North Central ERS Internal Audit Managers Brett Hennie and Kevin Cummings.

8. In December 2007 and January 2008, Deloitte conducted its Fiscal Year 2008 mid-year performance reviews for Consultants, Senior Consultants, Managers and Senior Managers.

9. On January 17, 2008, Manny received an "off track" performance rating on his Fiscal

Year 2008 mid-year review. Plaintiff's other counselees, Hennie and Cummings, also received "off track" Fiscal Year 2008 mid-year ratings.

10. Plaintiff refused to issue a Performance Improvement Plan (PIP) to Manny. McGowan issued a PIP directly to Manny on April 22, 2008, and plaintiff issued one to Hennie two days later.

11. In May 2008, Deloitte's year-end performance review process for Consultants, Senior Consultants, Managers and Senior Managers commenced. Cummings and Hennie received a rating of "5" (did not achieve a majority of expectations). A "5" rating was initially proposed for Manny, but his final year-end rating was increased to a "4" (mixed results, achieved some expectations but further development necessary).

12. Carrier delivered a speech on two occasions, once to Partners, Principals and Directors on May 20, 2008, and again to Partners, Principals, Directors and Senior Managers on May 22, 2008. In the speech, he advised with respect to poor performers that because of "new marketplace realities, this year we have begun returning to a more diligent approach to shedding low performers in the practice." In the speech, Carrier analogized shedding low performers to the pruning of blueberry bushes.

13. Plaintiff heard the speech both times and never complained to Carrier that he was offended by the reference to blueberry bushes or that the speech evidenced age discrimination.

14. Carrier met with Manny on June 20, 2008, and discussed various options available to him, including that he improve his performance and continue in his current position, that he explore other opportunities outside Deloitte, and that there be a mutual separation

from employment.

15.    Carrrier recommended that Manny be terminated and Benesh approved the

recommendation.  Manny was terminated on July 11, 2008.  He was paid his salary for

another four months.

16.    Deloitte's Performance Management system (DPM) is used for appraisal ratings and

leveling recommendations for Directors.  DPM is a computer-based program on

DeloitteNet, Deloitte's intranet system.  Directors access DPM and enter detailed self-

assessment information into various performance categories, such as: (1) People

(retention of top talent, strategic recruiting and achieving diversity goals); (2) Quality

(achieving quality goals and communicating importance of quality to managers and

staff), (3) Growth (revenue generation and increasing presence of practice in the

geography and industry), (4) Operational Excellence (improved revenue/margin growth

and improved billing and collections); and (5) Development (alignment of

business/performance requirements and professional/personal aspirations).  In addition,

metrics for each Director, such as total hours, client service (i.e., billable) hours, net

revenue and billing rates, are inputted into DPM.

17.    A Lead Endorser and a Secondary Endorser - Partners or Principals in the Director's

practice - are assigned to each Director. These individuals review the Director's self-

assessment and metrics and provide feedback and analysis of the Director's performance.

They formally assess the Director twice a year - at mid-year (approximately January) and

year-end (approximately May and June).  For Fiscal Year 2008, McGowan was

plaintiff's Counselor and Lead Endorser and Carrier was plaintiff's Secondary Endorser.

As is true of other employees, at mid-year, a Director is rated either "on track" or "off track" and at year-end, a Director receives a numerical rating from "1" to "5" with "1" being the best and "5" being the worst.

18. In January 2008, plaintiff received an on-track performance rating for his mid-year review.

19. On March 4, 2008, Carrier met with plaintiff.

20. The Fiscal Year 2008 year-end performance reviews occurred in May and June 2008.

21. Plaintiff received a "4" year-end performance rating for Fiscal Year 2008.  He had previously received a "3" rating for Fiscal Years 2005, 2006 and 2007.

22. On August 5, 2008, Carrier and Daniels met with plaintiff and informed him of the decision to terminate him.

### III.  Plaintiff's Motion for a Rule 56(f) Continuance (doc. 48)

On May 21, 2010, after defendant had filed its motion for summary judgment, plaintiff moved the court pursuant to Fed. R. Civ. P. 56(f) to deny the motion for summary judgment or, in the alternative, to continue the date for plaintiff to respond until after outstanding discovery had been produced and could be reviewed by plaintiff's counsel.  Plaintiff has now filed his response to the motion for summary judgment.  The court will therefore deny plaintiff's motion for a continuance as moot.

### IV.  Plaintiff's Objection to Magistrate's Order (doc. 63)

Plaintiff objects to that portion of the magistrate's order dated June 1, 2010, denying his request for documents regarding employee Jim Mittenzwei's successful appeal of the performance evaluation he received from Carrier  (doc. 50).  Plaintiff claims that the documents

demonstrate Carrier's discriminatory actions with regard to another employee who questioned

the same discriminatory decisions plaintiff questioned and will reflect a pattern by Carrier of

retaliating against people who protested his discriminatory conduct.  Plaintiff also contends the

documents are relevant to any effort defendant may make to impeach Mittenzwei by showing

that he is biased against Carrier.

Pursuant to Fed. R. Civ. P. 72(a), when deciding objections to a magistrate judge's order

stating a decision on a nondispositive matter, the district court must modify or set aside any part

of the order "that is clearly erroneous or is contrary to law."  The magistrate judge's order

denying plaintiff's request for documents related to the appeal of Mittenzwei's evaluation is not

clearly erroneous or contrary to law because Mittenzwei is not a party to this lawsuit, and he has

not made a claim that Carrier retaliated against him for opposing unlawful discrimination or

discriminated against him based on his age.  Moreover, plaintiff had the opportunity to depose

Mittenzwei to obtain information regarding the appeal.  Accordingly, plaintiff's objection is

overruled.

### V.  Plaintiff's Motion for Leave to File Sur-Reply (doc. 82)

Plaintiff seeks leave to file a sur-reply in opposition to defendant's motion for summary

judgment to address documents Deloitte produced pursuant to court order on August 6, 2010

(doc. 82). The documents consist of (1) sales data relating to how Deloitte credited sales on

accounts sold by plaintiff, and (2) handwritten notes by Rick Sanders, a Deloitte partner, relating

to comments Carrier allegedly made four days before plaintiff's termination.  Plaintiff claims

that the documents raise additional factual questions as to Deloitte's motive for terminating him.

Deloitte objects to plaintiff filing a sur-reply on the grounds that (1) the motion does not

satisfy the standard for a sur-reply brief because plaintiff does not allege that Deloitte raised new

facts or arguments in its reply in support of summary judgment, and (2) the factual information

contained in the documents does not constitute new evidence.  In the event the court grants the

motion, Deloitte requests the opportunity to respond to the allegations raised in the proffered sur-

reply.

The court will grant plaintiff leave to file the sur-reply.  Although the sur-reply does not

address new arguments or facts presented for the first time in Deloitte's reply brief, it does

address new evidence which Deloitte first produced pursuant to court order in August 2010,

which was after the summary judgment motion had been fully briefed.  Plaintiff is entitled to an

opportunity to address this evidence before the court issues a ruling on the summary judgment

motion.  It is not necessary to give Deloitte an opportunity to respond to the sur-reply in light of

its position that the documents it has produced do not contain any factual information which

constitutes new evidence and the information "is simply a regurgitation of the same facts and

argument that Plaintiff raised in his Memorandum in Opposition."  Doc. 85, p. 3.  The court will,

however, consider the substantive arguments Deloitte has presented in its memorandum

opposing the filing of plaintiff's sur-reply when ruling on the summary judgment motion.

## VI.  Motion for Summary Judgment

### A.  Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action.  This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

## B.  Age Discrimination Claims

### 1.  Applicable Law

The ADEA, 29 U.S.C. § 623(a)(1), and Ohio Rev. Code § 4112.02(A) prohibit an employer from discharging any individual because of his age.  The same evidentiary framework applies to claims under the federal and the Ohio statutes.  *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 469 (6th Cir. 2002).  A plaintiff may establish an age discrimination claim by either direct

or circumstantial evidence. *See Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 410 (6th Cir. 2008).  "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 570 (6th Cir. 2003) (en banc).  "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Id.*  Whether a plaintiff seeks to prove his age discrimination case by direct or circumstantial evidence, he has the burden to prove by a preponderance of the evidence "that age was the 'but-for' cause of [his] employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009).

If the plaintiff presents credible, direct evidence of discrimination, then he need not go through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 414 U.S. 811 (1973). *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248-49 (6th Cir.1995).  A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of age discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by a substantially younger individual, which may include an individual within the protected class.  *Martin*, 548 F.3d at 410; *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-313 (1996); *see also Geiger v. Tower Automotive,* 579 F.3d 614, 622 (6th Cir. 2009).  Plaintiff may also establish the fourth prong of a prima facie case of age discrimination by showing that he was treated less favorably than a substantially younger, similarly-situated individual. *Martin*, 548 F.3d at 410.

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

**2. Resolution**

Plaintiff claims that comments Carrier made shortly before his termination constitute

direct evidence of age discrimination.  Plaintiff alleges that in late May 2008, Carrier informed

supervisory personnel in a speech (the "blueberry speech") regarding the forced ranking bell

curve system he had instituted that he knew some of the listeners had challenged the system as

ambiguous or arbitrary.  Plaintiff claims that Carrier took questions during a session following

the blueberry speech at which he, Manny and Mittenzwei were present.  Specifically, plaintiff

claims that after Carrier came into the conference room to continue the discussion, he began to

take questions as to what he meant by "blueberry pruning."  Plaintiff contends that Carrier told

the managers that Deloitte "needed to prune the older mature branches to make room for the new

younger branches to become more fruitful over time."  Doc. 54, p. 15.  Manny testified at his

deposition, pp. 275-76, as follows:

> A.  He said that the process - - in the evaluation process we had difficult decisions
> to make.  And I want to draw the analogy with the blueberry discussions that I
> brought up.  And he mentioned that the process would be similar to a blueberry
> bush where you cut off the older branches to make way for the new younger
> branches so the new younger branches can become more fruitful over time.
>
> Q.  Okay.  So he said, and I quote: The process of blueberry pruning is to cut off
> the older branches to make way for the younger branches so they can grow over
> time.  Those were his exact words; is that your testimony?
>
> A.  I can't say they're his exact words, but it's close.
>
> * * *
>
> A.  He did not say anything that was inferred.
>
> Q.  Okay.  So he said, and I quote: The process of pruning blueberries is to cut off
> the older branches to make room for the younger branches.  That's what he said?
>
> A.  Yes.

Plaintiff testified at his deposition that he told Mittenzwei and Cathy Haines, a partner in

12

Cincinnati, that he thought Carrier's reference to the pruning of blueberry bushes was

inappropriate.  Pltf.'s depo., p. 179.  He said he thought the analogy was "ridiculous" and that "it

was obvious they were trying to get rid of the older more mature auditors and bring in the young

ones where we would get better leverage." *Id*.  Plaintiff further testified as follows:

> When he came back into the actual meeting that night when he was ad libbing, he
> - - a couple of times he mentioned that he - - you know, he talked about the
> pruning process, you know, people started asking him about it, and what is he
> really referring to . . . And he blatantly said that, you know, the idea is to get rid
> of the older, more experienced people and bring in the young people for leverage
> on the jobs and we were actually going to start a new process where we were just
> - - we were Internal Audit which has never done that before, go out and recruit at
> 30 different colleges to bring in the young people so we can bill them out at a
> lower rate.

*Id*. at 182.  Mittenzwei testified that he recalled Carrier speaking about "a pruning of the older,

more mature branches to allow newer branches to grow."  Mittenzwei depo., p. 50.  Mittenzwei

testified that he recalled "In general, there was disbelief that speech was being read."  *Id*. at 64.

As additional direct evidence, plaintiff relies on a comment Carrier allegedly made after

Manny had been terminated.  Plaintiff claims that Carrier commented that the opening at the

Senior Manager level created by Manny's termination would allow one of two "younger"

managers to move up, and one of these two younger managers, Shane Negangard, was in fact

promoted to Senior Manager at the next annual review cycle in August 2009.  *Id*. at 103-105.

Plaintiff contends that this "affirmative expression of happiness that terminating Manny made

way for 'younger' employees to move up," coupled with Carrier's "blueberry" comments, is

"direct evidence of discriminatory bias on the part of the key decision maker who terminated

Plaintiff."  Doc. 54, p. 24.

As Judge Beckwith noted in the summary judgment decision in Manny's case,

> Slurs or statements that suggest that the decision-maker relied on impermissible stereotypes to assess an employee's ability to perform can constitute direct evidence. ***Erwin v. Potter,*** 79 Fed. Appx. 893, 897 (6th Cir. 2003). Additionally, however, the direct evidence must establish not only that the employer was predisposed to discriminate on the basis of a protected characteristic, but also that the employer in fact acted on that predisposition. ***DiCarlo v. Potter***, 358 F.3d 408, 415 (6th Cir. 2004).

***Manny v. Deloitte & Touche, LLP***, Case No. 08-761, Doc. 95, p. 14 (Oct. 4, 2010). Judge Beckwith determined that the blueberry speech, as given, "is indirect or circumstantial evidence of age discrimination because a factfinder must infer that Carrier's references to the branches of a blueberry bush were really about an employee's age," and Manny had admitted in his deposition that the speech was an analogy about age. ***Id***., p. 15 (citing Manny depo., pp. 261, 268-69). Judge Beckwith determined, however, that the speech as allegedly explained by Carrier is direct evidence of discrimination. ***Id***. Judge Beckwith relied on Mauer's deposition testimony that Carrier told the assembled group immediately after giving the speech that the specific purpose of the rating system was to "get rid of the older, more experienced people and bring in young people for leverage on jobs[.]" ***Id***. She determined that

> This comment is hardly ambiguous and requires no inference to ascertain the discriminatory purpose behind Deloitte's performance evaluation system. If believed by a factfinder, Mauer's testimony is direct evidence that Plaintiff was terminated because of his age.

***Id***.

This court agrees with Judge Beckwith's reasoning and finds Mauer's testimony to be direct evidence of age discrimination. The comments were made by the decision maker in plaintiff's case, Carrier, and related in time to his termination. It is for the jury to decide whether Carrier made the comments which plaintiff, Manny and Mittenzwei attribute to him and to determine whether Carrier terminated plaintiff on account of his age.

14

Even if Carrier's comments do not constitute direct evidence of discrimination, there is sufficient circumstantial evidence to allow the case to proceed to trial.  Deloitte argues that plaintiff cannot establish that he was replaced or that similarly-situated, non-protected employees were treated more favorably.  Assuming this to be true, plaintiff's inability to establish these matters is not fatal to his case in light of the particular circumstances surrounding his termination.  The prima facie inquiry set forth in *McDonnell Douglas*  "was never intended to be rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577 (1978); *Lindsay v. Yates,* 578 F.3d 407, 417 (6th Cir. 2009).  So long as "additional evidence" exists beyond the first three *McDonnell Douglas* elements which indicates discriminatory intent "in light of common experience," the required inference of discrimination can be drawn in satisfaction of the prima facie case. *Lindsay*, 578 F.3d at 418.  The "additional evidence" that can suffice to establish a prima facie case "depends on the attendant facts and circumstances." *Id*.  In this case, Carrier's comments, coupled with the sequence of events following plaintiff's "on track" rating in January 2008, are sufficient circumstantial evidence to create a genuine issue of material fact as to whether Deloitte terminated plaintiff because of his age. *See Blair v. Henry Filters, Inc*., 505 F.3d 517, 530 (6th Cir. 2007) (statements demonstrating that the plaintiff's direct supervisor (1) repeatedly mocked his  age, (2) removed him from a lucrative account because of his age, and (3) told other employees that he wanted younger salesmen, were sufficient circumstantial evidence to create a genuine issue of material fact as to whether the plaintiff was terminated because of his age).  Although Deloitte has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge, the record is replete with disputed facts that bear on the issue of pretext and preclude a determination on summary judgment as to whether

Deloitte's reason for discharging plaintiff was a pretext for age discrimination.  This is a

determination for the jury to make after weighing the evidence presented at trial.

For these reasons, Deloitte is not entitled to summary judgment on plaintiff's age

discrimination claims.[1]

### C.  Retaliation Claims

### 1.  Applicable Law

Plaintiff alleges he was terminated in retaliation for protesting Deloitte's alleged

discriminatory conduct toward Manny and for raising concerns about age discrimination.  Both

the ADEA, 29 U.S.C. § 623(d), and Ohio Rev. Code § 4112.02(I) make it unlawful for an

employer to discriminate in any manner against an individual because that individual has

opposed an unlawful age discrimination practice.  To prove a prima facie case of unlawful

retaliation, the plaintiff must demonstrate that: (1) he engaged in protected activity by

complaining of age discrimination; (2) defendant knew about his exercise of protected rights; (3)

the defendant thereafter took an adverse action against him; and (4) there was a causal

connection between the protected activity and the adverse action. *Spengler v. Worthington*

*Cyclinders,* 615 F.3d 481, 491-92 (6th Cir. 2010); *Greer-Burger v. Temesi,* 116 Ohio St.3d 324,

327, 879 N.E.2d 174, 180 (1997).

Causation can be proven indirectly through circumstantial evidence such as suspicious

timing.  *Lindsay,* 578 F.3d at 418 (citing *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 523, 525

(6th Cir. 2008)). Temporal proximity between an assertion of protected rights and a materially

---

[1]In light of the court's determination, it need not address plaintiff's argument that summary judgment is not appropriate because there is an adverse inference arising from Deloitte's alleged destruction of evidence related to its PIP and termination policies.

adverse action is sufficient to establish the causal connection element of a retaliation claim

"[w]here an adverse employment action occurs very close in time after an employer learns of a

protected activity." *Id*. (citing *Mickey*, 516 F.3d at 525); *DiCarlo*, 358 F.3d at 421.  The Sixth

Circuit has declined to find a causal connection based on timing alone where "the nexus is not

'very close.'"  *Id*. at 419 (citing *Mickey*, 516 F.3d at 523).

"The burden of establishing a prima facie case in a retaliation action is not onerous, but

one easily met."  *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).  If the plaintiff

establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory

reason for its action.  *Spengler,* 615 F.3d at 492.  If defendant succeeds in doing so, the burden

shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true

reason for the decision.  *Id*.

## 2.  Resolution

Plaintiff's deposition testimony is rather nebulous with regard to whether he complained

that Manny was being treated unfairly on account of his age.  Plaintiff has, however, come

forward with additional evidence that he was retaliated against for exercising his protected

rights.  The evidence consists of handwritten notes of a conversation with Brad Carrier dated

July 31, 2008, which purportedly were taken by Rick Sanders, a Director at Deloitte.  *See* doc.

82, Exh. 2.[2]  The notes reflect that days before plaintiff's termination, members of Deloitte's

management had discussed the fact that plaintiff and Manny had retained the same attorney,

---

[2]Defendant challenges this evidence as hearsay, but plaintiff has produced an email from defendant's counsel demonstrating defendant's willingness to stipulate to the authenticity of the notes, which counsel describes as "handwritten notes of a conversation between Mr. Sanders and Brad Carrier," (doc. 86, Exh. A), both of whom are members of Deloitte's management.  The court may therefore consider the notes on summary judgment.

plaintiff had told some individuals that he was going to sue Deloitte, and Carrier and Benesh

wanted to terminate plaintiff because they considered him to be "disruptive."  When the notes

are considered in conjunction with the remaining evidence of record, there is a genuine issue of

material fact as to whether defendant retaliated against plaintiff for exercising his protected

rights by terminating him just days after this discussion took place.  Defendant therefore is not

entitled to summary judgment on the retaliation claims.

### VII.  Conclusion

In accordance with the foregoing, plaintiff's motion for a continuance (doc. 48) is

**DENIED** as moot.  Plaintiff's objection to the magistrate judge's order (doc. 63) is

**OVERRULED**.  Plaintiff's motion for leave to file sur-reply (doc. 82) is **GRANTED**.

Defendant's motion for summary judgment (doc. 45) is **DENIED**.  The case will proceed

to trial on plaintiff's claims for age discrimination and retaliation under the ADEA and Ohio law

(Counts I , II, III and IV) pursuant to the schedule previously established by the court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court